UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSHUA LEE McGIBONEY,<br><br>              Petitioner,<br><br>v.<br><br>KEITH YORDY, Warden of the Idaho<br>State Correctional Institution,<br><br>            Respondent. | Case No. 1:16-cv-00150-REB<br><br>**MEMORANDUM DECISION AND<br>ORDER** |

Pending before the Court in this habeas corpus action is Respondent's Motion for Summary Dismissal, in which he argues that all of Petitioner's claims are procedurally defaulted. (Dkt. 12.) Petitioner asserts that some of his claims are not defaulted and that other claims should be excused from default. (Dkt. 15.) Also pending is Petitioner's Motion for Discovery for purposes of establishing an exception to procedural default. (Dkt. 16.) The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by Respondent. (Dkt. 11, 19.) *See* Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006).

Having carefully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order concluding that all of Petitioner's

claims are procedurally defaulted, but allowing limited discovery for purposes of determining whether cause and prejudice or actual innocence excuses the default. The Court will therefore deny Respondent's Motion for Summary Dismissal without prejudice and will reconsider any renewal of the motion following discovery and supplemental briefing.

## BACKGROUND

Following a jury trial in the Fourth Judicial District Court in Ada County, Idaho, Petitioner was convicted of (1) robbery, (2) aggravated battery, enhanced for use of a firearm, and (3) burglary, enhanced for use of a firearm. (State's Lodging B-4 at 1.) He was sentenced to concurrent terms of life imprisonment with fifteen years fixed on the robbery count, thirty years in prison with fifteen years fixed on the aggravated battery count, and twenty-five years in prison with fifteen years fixed on the burglary count. (*Id.* at 2.) Petitioner appealed his sentence, and the Idaho Court of Appeals remanded for a determination of whether the aggravated battery and burglary crimes "arose from an indivisible course of conduct," which would reduce the statutory maximum sentence pursuant to Idaho Code § 19-2520E. (*Id.* at 5.) On remand, the trial court found the conduct to be divisible and reinstated its initial sentences. (State's Lodging C-1 at 311.) Petitioner did not appeal.

Petitioner then filed a petition for post-conviction relief in the state district court, asserting numerous grounds for relief and requesting DNA testing, under Idaho state law, of several pieces of evidence that had been admitted at trial. Though Petitioner had

assistance from his former attorney in preparing the petition, Petitioner filed it pro se.[1] (*Id*. at 4-15.) Counsel was later appointed to represent Petitioner. The court dismissed the post-conviction petition, and Petitioner appealed. (*Id*. at 367-76, 389-414, 417-19.)

Petitioner requested, and was appointed, new counsel on appeal. Petitioner states that he "continually stressed to [post-conviction appellate counsel] that [Petitioner] wanted all of [his] constitutional claims to be preserved for federal habeas corpus review" and that other inmates had told Petitioner to "federalize" his claims. (Dkt. 15-1 ¶ 15.) Petitioner's counsel allegedly told Petitioner that "the DNA issue was a 'home run' and not to worry about it." (*Id*. ¶ 16.) Because he was "still concerned," Petitioner asked to see a draft of counsel's opening brief, but the attorney sent Petitioner a copy of the brief only after it had already been filed. (*Id*. ¶¶ 17-18.) That opening brief raised two claims: (1) that Petitioner was entitled to DNA testing of certain evidence, and (2) that trial counsel rendered ineffective assistance by failing to file a motion to sever the firearm charge from the other charges. (State's Lodging D-1.)

After briefing was completed, the Idaho Supreme Court assigned the case to the Idaho Court of Appeals. (State's Lodging D-10.) Shortly thereafter, Petitioner, acting pro se, submitted an affidavit to the Idaho Supreme Court. The body of the affidavit makes clear that Petitioner understood that his case had been assigned to the Idaho Court of Appeals for adjudication. (State's Lodging D-4 at 1-2 (referring to the requirement of

---

[1]     According to Petitioner, his family had hired an attorney to represent Petitioner during the post-conviction proceedings, but ran out of funds to pay for the attorney. The attorney then completed a draft of a post-conviction petition, which Petitioner filed pro se. (Dkt. 15-1 ¶¶ 3, 6-8.)

exhaustion, "to include a request for review [in the state supreme court] should the appellant [sic] court deny my appeal").) The affidavit requested that, if the court of appeals were to deny relief, the state supreme court take "express notice" that Petitioner wanted the court to hear "all of [the] issues . . . in my post conviction [petition]," including claims of ineffective assistance of trial counsel, prosecutorial misconduct, abuse of authority of the trial judge, failure to prove the elements of the crime beyond a reasonable doubt, and other constitutional violations. (*Id.* at 2.)

Petitioner also stated in the affidavit that he wanted his counsel to amend the appellate briefing. Petitioner stated that he intended to exhaust all of the claims that he would later be asserting in a federal petition for habeas corpus relief. (*Id.*) Petitioner attached to his affidavit a letter he had written to his attorney, indicating that he desired his post-conviction appeal "to encompass and characterize the validity of all exhibits and issues that was [sic] originally presented to the district court." (*Id.*, Ex. A at 2.) Petitioner's affidavit was not styled as a motion, nor did the caption of the document otherwise indicate that Petitioner was asking the Idaho Supreme Court to intervene in the case, which was then before the Idaho Court of Appeals, or to take any other action with respect to Petitioner's appeal.

Either because it had not reviewed the affidavit, or because it did review but did not act on the affidavit, the Idaho Court of Appeals addressed only the two issues presented in the opening brief filed by Petitioner's counsel—DNA testing and trial counsel's failure to file a motion to sever. (State's Lodging D-5.) The court of appeals affirmed the dismissal of the post-conviction petition. (*Id.*)

**MEMORANDUM DECISION AND ORDER - 4**

Petitioner's counsel then filed a petition for review with the Idaho Supreme Court, raising only the question of whether Idaho law entitled Petitioner to DNA testing. (State's Lodging D-6.) Counsel's brief in support of the petition for review stated that, in the event the state supreme court granted review, the court should review "all issues raised in the Court of Appeals." (State's Lodging D-7 at 12.) Petitioner did not file any additional pro se documents, nor did he request permission to file a supplemental pro se brief. The Idaho Supreme Court denied the petition for review. (State's Lodging D-8.)

Petitioner asserts numerous claims in his federal Petition. Claim I(A) asserts ineffective assistance of trial counsel based on counsel's failure to investigate and present evidence related to the firearm used in the crime, including (i) a thumb print on the magazine of the gun, (ii) DNA testing on the gun, magazine, bullets, and casings, and (iii) the ownership and possession of the firearm. Claim I(B) asserts ineffective assistance of trial counsel for failing to investigate and present corroborating witness testimony, including testimony from (i) Travis Williams, (ii) Darby Lusk, (iii) Brook Holloway, and (iv) Justin Loera. Petitioner's remaining ineffective assistance of counsel claims rely on trial counsel's failure to investigate and challenge an identification of Petitioner (Claim I(C)), failure to move to sever the felon-in-possession charge from the other charges (Claim I(D)), and failure to object during the prosecution's closing argument (Claim I(E)).

The Petition also asserts violations of due process based on the prosecution's alleged misconduct during closing argument (Claim II) and alleged failure to disclose favorable and material evidence to the defense (Claim III).

**MEMORANDUM DECISION AND ORDER - 5**

Respondent now argues that all of Petitioner's claims are procedurally defaulted. (Dkt. 12-1.) Petitioner responds by admitting the default of Claim I(A)(ii), Claim (I)(B)(iv), and Claim II, but asserting that an exception to default applies to those claims. Petitioner also contends that his other claims (1) are not procedurally defaulted but were, in fact, fairly presented in state court through Petitioner's pro se affidavit filed in the Idaho Supreme Court, and (2) may be heard on the merits, even if they are defaulted, under the fundamental miscarriage-of-justice exception to default. (Dkt. 15.)

**1.      Petitioner's Claims are Procedurally Defaulted**

For the reasons that follow, the Court agrees with Respondent that all of Petitioner's claims are procedurally defaulted.

### A.      *Standard of Law for Procedural Default*

A habeas petitioner must exhaust his or her remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To do so, the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845. In a state that has the possibility of discretionary review in the highest appellate court, like Idaho, the petitioner must have presented all of his federal claims at least in a petition seeking review before that court. *Id.* at 847. "Fair presentation" requires a petitioner to describe both the operative facts

and the legal theories upon which the federal claim is based. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

The mere similarity between a federal claim and a state law claim, without more, does not satisfy the requirement of fair presentation. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam). General references in state court to "broad constitutional principles, such as due process, equal protection, [or] the right to a fair trial," are likewise insufficient. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). The law is clear that, for proper exhaustion, a petitioner must bring his federal claim before the state court by "explicitly" citing the federal legal basis for his claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray*, 518 U.S. at 161-62. Procedurally defaulted claims include those within the following circumstances: (1) when a petitioner has completely failed to raise a claim before the Idaho courts; (2) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts; and (3) when the Idaho courts have rejected a claim on an adequate and independent state procedural ground. *Id.*; *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

To be an "adequate" state ground, a procedural bar must be one that is "'clear, consistently applied, and well-established at the time of the petitioner's purported

default." *Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)). A state procedural bar is "independent" of federal law if it does not rest on, and if it is not interwoven with, federal grounds. *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003).

### B. Analysis

The most straightforward manner in which to resolve the exhaustion and procedural default status of Petitioner's federal claims is to determine which claims were raised and addressed on the merits in the state court appellate proceedings. Because Petitioner did not file an appeal following the initial remand from the Idaho appellate court, no claims were exhausted during the direct appeal process.

Respondent argues that only a single claim was fairly presented to the Idaho Supreme Court in the petition for review of the Idaho Court of Appeals' decision affirming the dismissal of Petitioner's post-conviction petition. In Petitioner's appellate attorney's brief in support of the petition for review, the only issue raised was whether Petitioner was entitled to DNA testing under Idaho law. (State's Lodging D-7 at 12; State's Lodging D-5 at 4-5.) *See also* Idaho Code § 19-4902(b) (allowing a request for DNA testing of evidence "that was secured in relation to the trial . . . but which was not subject to the testing that is now requested because the technology for the testing was not available at the time of trial"). This claim is not presented in the federal Petition; indeed, claims of violations of state law are not cognizable on federal habeas review. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

However, Petitioner asserts that his pro se affidavit (filed with the Idaho Supreme Court after briefing was completed in the post-conviction appellate proceedings and the case was assigned to the Idaho Court of Appeals) constitutes fair presentation of all of the issues in his state post-conviction petition, including those raised as Claims I(A)(i) & (iii), I(B)(i)-(iii), and III. (Dkt. 15 at 9-15.) In making that argument, Petitioner relies on *Clemmons v. Delo*, 124 F.3d 944 (8th Cir. 1997).

In *Clemmons*, the petitioner raised a *Brady* claim[2] in his state post-conviction petition but his appellate post-conviction counsel did not raise that claim on appeal. Counsel did not include the claim in his appellate briefing despite the fact that the petitioner "specifically stated [to his attorney] that he wanted all of his issues preserved" and that the petitioner—after the brief was filed without including all of Clemmons's issues—instructed counsel to file a supplemental brief. *Id.* at 948. The petitioner also specifically notified counsel that "issues not raised would later be held not to have been properly presented." *Id.* Counsel responded that the decision on which claims to raise was correct, stating that he had "made every argument on [the petitioner's] behalf that [he] felt could be supported by law and evidence." *Id.* Clemmons then filed a motion with the Missouri Supreme Court, asking that he be allowed to file a supplemental pro se brief, informing the court that counsel had not included all of the claims the petitioner had requested. The court denied the motion.

---

[2]     *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that the prosecution has a duty to disclose evidence favorable to the defense that is material to guilt or punishment, regardless of whether the defense has requested such evidence).

In federal habeas proceedings, Clemmons asserted the *Brady* claim. He then faced an argument that the *Brady* claim was procedurally defaulted because it had not been fairly presented to the highest state court. The Eighth Circuit held that Clemmons had fairly presented the issue, despite counsel's failure to include it in counsel's brief, because Clemmons "did the only thing he could do: he tried to bring the issue to the attention of the Missouri Supreme Court himself." *Id.* Because there was nothing more he could have done "as a practical matter," to present that claim, the claim was not procedurally defaulted. *Id.* at 948-49; *see also Veenstra v. Smith*, No. 1:11-CV-00632-BLW, 2014 WL 1270626, at *16 (D. Idaho Mar. 26, 2014) ("[T]o fairly present claims in a circumstance where the petitioner disagrees with counsel's narrowing of claims, a petitioner must take steps on his own, such as seeking leave of court to introduce a supplemental pro se filing containing the additional claims counsel refused to present.").

The Ninth Circuit considered and then distinguished *Clemmons* in *Custer v. Hill*, 378 F.3d 968 (9th Cir. 2004). In that case, Custer's attorney did not raise an ineffective assistance claim in the petition for review in the Oregon Supreme Court, which was required for proper exhaustion. *Id.* at 974. In federal habeas proceedings, Custer relied on *Clemmons* in arguing that he fairly presented his ineffectiveness claim to the state's highest court by "request[ing] and receiv[ing] permission from the Oregon Court of Appeals [the intermediate court of appeals] to file a *pro se* brief" asserting that claim. *Id.* at 974-75.

The Circuit, however, rejected Custer's argument that his action during post-conviction appellate proceedings fairly presented the claim to the Oregon Supreme Court.

Although Custer "did take personal action to bring the ineffective assistance of counsel claim to the attention of the *Oregon Court of Appeals* by requesting to file a *pro se* brief . . . he did not take similar action with regard to the *Oregon Supreme Court*, the court in which the issue must be raised to be preserved." *Id*. at 975 (emphasis added). Because Custer did not attempt to raise the issue in the highest state court, that claim was not properly exhausted and was procedurally defaulted.

Here, Petitioner's case falls between the holdings in *Clemmons* and *Custer*. Like the petitioner in *Clemmons*, Petitioner contends that he did attempt to raise the issue before the highest state court. He submitted an affidavit that referred to Petitioner's intent to raise all of his post-conviction claims, despite the fact that his attorney's brief did not do so. However, unlike the petitioner in *Clemmons*, Petitioner did not file an actual motion, nor did he otherwise request leave to submit a pro se brief. Instead, he filed an "affidavit" that, he claimed, constituted notice to the Idaho Supreme Court that he intended to exhaust all of his claims and asked that court to consider the original petition in the event the Idaho Court of Appeals affirmed the lower court. There was nothing in the caption of the pro se document that would have signaled to the Idaho Supreme Court (or to the Idaho Court of Appeals, for that matter) that Petitioner was asking it to allow him to submit a pro se brief.

Like the petitioner in *Custer*, Petitioner raised his dispute with counsel and his desire to include all of his postconviction claims on appeal only once—in a state that has a dual-review system. Once the case was assigned to the intermediate court of appeals, but before argument, Petitioner submitted the affidavit referring to his desire to exhaust

all of his post-conviction claims. However, he did not renew that request once the Idaho Court of Appeals affirmed the dismissal of the post-conviction petition and the Idaho Supreme Court took up the case.

Therefore, the Court concludes that Petitioner's case is more like *Custer* than *Clemmons*. Petitioner did not file a motion raising the abandoned claims at the petition-for-review stage, *after* the Idaho Court of Appeals affirmed the dismissal of his post-conviction petition. His action, although clearly intended to raise additional claims not asserted in counsel's briefing, did not constitute all that Petitioner could have done to bring the issues before the highest state court.

In addition to filing his affidavit, Petitioner could have moved to submit his own pro se brief raising the additional issues, rather than simply noting in an affidavit that he wanted additional claims to be considered. Petitioner asserts that his failure to file an actual motion to submit a supplemental brief "is not a dispositive difference between his case and *Clemmons*." (Dkt. 15 at 11.) The Court disagrees. The exhaustion requirement is designed to give state courts a fair opportunity to address a petitioner's claim before the federal courts get involved. Without a formal motion, the state courts were not given such an opportunity. Nothing in the title of Petitioner's pro se affidavit notified either the court of appeals or the state supreme court that Petitioner was requesting that the court take an action of any kind in his case. Courts are not required to act on an affidavit without an accompanying motion. This is particularly true where, as here, the affidavit is a mere summary and did not support with argument any of the substantive claims referred to in that affidavit.

**MEMORANDUM DECISION AND ORDER - 12**

Further, even if the failure to file a formal motion is not dispositive, Petitioner could have—and should have—raised the issues to the Idaho Supreme Court during the petition-for-review stage. Even if Petitioner had titled his affidavit a "motion" and had formally requested leave to file a pro se brief, that motion would have gotten the attention of only the Idaho Court of Appeals. Petitioner did not submit anything during the petition-for-review stage that would have called the *Idaho Supreme Court's* attention to the issues. *See Custer*, 378 F.3d at 975 ("[The petitioner] did not take similar action [to raise his desired claim] with regard to the Oregon Supreme Court, the court in which the issue must be raised to be preserved."). The Court does not find sufficient Petitioner's preemptive request, before the court of appeals even considered his case, that the state supreme court should construe an eventual petition for review to raise all of Petitioner's other claims, because no such petition had been filed at that time. It was not a foregone conclusion that the court of appeals would affirm or, if it did, that Petitioner would file a petition for review. The Idaho Supreme Court was not required to anticipate either event, or to resurrect Petitioner's previously unripe request once it took up the case following the decision of the Idaho Court of Appeals.[3]

Moreover, even if the Idaho appellate courts had reviewed the content of Petitioner's affidavit—regardless of its title—the document was not the equivalent of a supplemental brief because it did not comply with Idaho state procedural rules for

---

[3]     Idaho's system of using a single docket and case number in cases where the Idaho Supreme Court assigns a case to the Idaho Court of Appeals, and then entertains any petition for review from the decision of the court of appeals (*see* Idaho App. R. 110), does not alter the Court's analysis. The Idaho Supreme Court was not required to take any action that Petitioner might have requested with respect to a then-nonexistent petition for review.

**MEMORANDUM DECISION AND ORDER - 13**

presenting claims on appeal. Petitioner's mere reference to the general claims he desired to present was insufficient, under state law, to exhaust those claims. Idaho appellate courts do not consider issues raised on appeal that "are not supported by propositions of law, authority, or argument." *State v. Zichko*, 923 P.2d 966, 970 (1996). Thus, to the extent that the affidavit could be considered a proper *attempt* to raise claims on appeal, and even if the Idaho Supreme Court had, in fact, considered Petitioner's affidavit and the issues referred to therein, those claims would still have been procedurally barred. *See Zichko v. Idaho*, 247 F.3d 1015, 1021 (9th Cir. 2001) (holding that the *Zichko* principle is an adequate and independent state procedural ground).

For the foregoing reasons, the Court concludes that none of Petitioner's current habeas claims was fairly presented to the Idaho Supreme Court. Because it is now too late for Petitioner to do so, those claims are procedurally defaulted. *Gray*, 518 U.S. at 161-62.

## 2.     Exceptions to Procedural Default

That Petitioner's claims are procedurally defaulted does not end the inquiry. A federal district court may still hear the merits of a procedurally defaulted claim, but only if the petitioner meets one of two exceptions: (1) a showing of adequate legal cause for the default and prejudice arising from the default, or (2) a showing of actual innocence, which means that a miscarriage of justice will occur if the constitutional claim is not heard in federal court.[4] *Murray v. Carrier*, 477 U.S. 478, 488 (1986), *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

---

[4]     Neither an assertion of cause and prejudice nor an assertion of actual innocence under *Schlup* is an independent constitutional claim. Rather, these are federal procedural arguments that, if sufficiently

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray v. Carrier*, 477 U.S. at 488. To show "prejudice," a petitioner generally bears "the burden of showing not merely that the errors [in his proceeding] constituted a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Cause for the default may exist as a result of ineffective assistance of counsel. For example, the failure on direct appeal to raise a meritorious claim of trial error—or the failure at trial to preserve a claim for appeal—may render that claim procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) ("[I]n certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice."). However, for ineffective assistance of trial or direct appeal counsel to serve as cause to excuse a default, that ineffectiveness claim must itself have been separately presented to the state appellate courts. *Id.* ("A claim of ineffective assistance . . . generally must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.") (internal quotation marks and alteration omitted). If the ineffective assistance asserted as cause was not fairly presented to the highest state court, a petitioner must show that an excuse for that separate default exists, as well. *Id.* at 453 ("[A]n ineffective-assistance-of-counsel claim

---

established by the petitioner, allow a federal court to consider the merits of an otherwise procedurally-defaulted constitutional claim.

asserted as cause for the procedural default of another claim can itself be procedurally defaulted.").

A petitioner does not have a federal constitutional right to the effective assistance of counsel during state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 554 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993). As a result, the general rule is that any errors of counsel during a post-conviction action cannot serve as a basis for cause to excuse a procedural default. *Coleman*, 501 U.S. at 752.

The Supreme Court established a narrow exception to that general rule in *Martinez v. Ryan*, 566 U.S. 1 (2012). *Martinez* held that, in limited circumstances, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9.

The Supreme Court has described and clarified the *Martinez* cause and prejudice test as consisting of four necessary prongs: (1) the underlying claim of ineffective assistance of counsel must be a "substantial" claim; (2) the "cause" for the procedural default consists of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" collateral review proceeding where the ineffective assistance of trial counsel claim could have been brought[5]; and (4) state law requires that an ineffective assistance of counsel claim be raised in an initial-review collateral proceeding, or by "design and operation"

---

[5] The *Martinez* exception applies only to claims that were defaulted in the initial-review collateral proceeding—a petitioner may not use, as cause to excuse a default, any attorney error that occurred in "appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Martinez*, 566 U.S. at 16.

such claims must be raised that way, rather than on direct appeal. *Trevino v. Thaler*, 133 S. Ct. 1911, 1918, 1921 (2013). *Martinez* does not apply to any claims other than claims of ineffective assistance of trial counsel ("IATC"), and it can apply only if the underlying IATC claim is procedurally defaulted. *Davila v. Davis*, 137 S. Ct. 2058, 2063 (2017) (holding that *Martinez* does not apply to underlying claims of ineffective assistance of direct appeal counsel); *Hunton v. Sinclair*, 732 F.3d 1124, 1126-27 (9th Cir. 2013) (holding that *Martinez* does not apply to claims under *Brady v. Maryland*).

If a petitioner cannot show cause and prejudice for his procedural default, he can still bring the claim in a federal habeas petition if he makes a showing of actual innocence. *Murray v. Carrier*, 477 U.S. at 496. Actual innocence in this context "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In asserting actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. A procedurally defaulted claim may be heard under the miscarriage of justice exception only if "in light of all of the evidence, 'it is more likely than not that no reasonable juror would have found [Petitioner] guilty beyond a reasonable doubt.'" *United States v. Avery*, 719 F.3d 1080, 1083 (9th Cir. 2013) (quoting *Schlup*, 513 U.S. at 327). Stated another way, it must be more likely than not that, in an error-free trial, *every* reasonable juror would vote to acquit.

This is an extremely demanding standard that "permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006). A court considering whether a petitioner has established actual innocence must consider "all the evidence, old and new, incriminating and exculpatory, admissible at trial or not." *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011) (en banc) (internal quotation marks omitted). The actual innocence analysis "does not turn on discrete findings regarding disputed points of fact, and '[i]t is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses.'" *House v. Bell*, 547 U.S. 518, 539-40 (2006) (quoting *Schlup*, 513 U.S. at 329 (alteration in original)). Rather, the court must "make a probabilistic determination about what reasonable, properly instructed jurors would do." *Schlup*, 513 U.S. at 329.

### A. The Court Does Not Have Sufficient Information at this Time to Conclude that an Exception to Procedural Default Applies to any of Petitioner's Claims

Petitioner argues that, under *Martinez v. Ryan*, ineffective assistance of his initial post-conviction counsel constitutes cause to excuse the procedural default of Claims I(A)(ii) and I(B)(iv), which allege ineffective assistance of trial counsel based on counsel's failure to conduct DNA testing and failure to investigate potential witness Justin Loera. Petitioner also argues that a fundamental miscarriage of justice will result if all of his claims are not heard on the merits.

However, without discovery, Petitioner likely cannot show that his ineffective assistance claims are substantial, as necessary for the *Martinez* exception to apply.[6] And without discovery, Petitioner cannot meet the strict standards of the actual innocence gateway. The Court now considers whether discovery is appropriate in this case.

**B.    The Court Will Allow Limited Discovery for Purposes of the Remaining Procedural Default Issues**

Because the record as it currently stands is insufficient for Petitioner to satisfy either exception to procedural default, Petitioner has moved for discovery. (Dkt. 16.)

i.    Standard of Law for Discovery in Habeas Cases

The statutory restrictions on the presentation of new evidence in federal habeas proceedings, *see Cullen v. Pinholster*, 563 U.S. 170, 180 (2011), and 28 U.S.C. § 2254(e)(2), do not apply when a petitioner seeks to establish an exception to procedural default, *Dickens v. Ryan*, 740 F.3d 1302, 1320-21 (9th Cir. 2014) (en banc). However, habeas petitioners, unlike traditional civil litigants, are not entitled to discovery as a matter of course, *Bracy v. Gramley*, 520 U.S. 899, 904 (1997), and a petitioner must still show good cause to be entitled to discovery on a procedural default issue, *see* Rule 6(a) of the Rules Governing Section 2254 Cases ("Habeas Rules").

---

[6]    Respondent's argument that *Martinez v. Ryan* does not apply because Petitioner initially filed his post-conviction petition pro se, and therefore the default could not have been caused by later-appointed post-conviction counsel, is frivolous. (*See* Dkt. 18 at 9.) The *Martinez* decision itself held that the exception can apply both to pro se post-conviction petitioners and to petitioners who received ineffective assistance of initial post-conviction counsel. 566 U.S. 1, 17, 132 S. Ct. at 1320 ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, *there was no counsel* or [if] counsel in that proceeding was ineffective." (emphasis added)). Respondent is reminded that frivolous arguments are improper and can potentially give rise to sanctions. *See* Fed. R. Civ. P. 11.

Good cause exists when there is "reason to believe that the petitioner *may*, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Bracy*, 520 U.S. at 908-09 (emphasis added) (internal quotation marks and alteration omitted). To show good cause, a request for discovery must be supported by specific factual allegations. Habeas corpus review "was never meant to be a fishing expedition for habeas petitioners to explore their case in search of its existence." *Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir. 1999) (internal quotation marks omitted). If good cause is shown, the extent and scope of discovery is within the court's discretion.

    ii.    <u>Analysis</u>

Petitioner asks to be allowed to conduct discovery as to seven categories of evidence: (1) State's trial exhibits 61 (gun magazine), 61B (unused round), 61C (unused round), 61D (unused round); 62 (used round), 63 (fired shell casing), 64 (fired shell casing), 65 (fired shell casing), 66 (unfired 9MM round), and 67 (unfired 9MM round), to be sent to Bode Cellmark Forensics for testing; (2) "all notes, DNA profiles, allele tables, test results, charts, and reports associated with forensic DNA testing" in Petitioner's case that are in the possession of the Idaho State Police; (3) records from Buckhorn Gun and Pawn related to the firearm at issue in Petitioner's case; (4) crime scene photographs in the possession of the Ada County Prosecuting Attorney's Office; (5) crime scene photographs in the possession of the Ada County Public Defender's Office; (6) two audio CDs of officers' initial witness interviews in the possession of the Ada County Prosecuting Attorney's Office; and (7) two audio CDs of officers' initial interviews in the

possession of the Ada County Public Defender's Office (to the extent they were produced during discovery in Petitioner's underlying criminal proceedings).

Petitioner has shown good cause for some of his requested discovery. The Court concludes there is reason to believe that, if the evidence listed in categories 1, 2, and 3 is fully developed, Petitioner might be entitled to the application of an exception to procedural default. *See Martinez*, 566 U.S. 1; *Schlup*, 513 U.S. 298.

Categories 1 and 2 relate to evidence of DNA on the inside of the gun, shells, and casings. The Idaho State Police and the evidence custodian at the Ada County Courthouse have informed Petitioner that they still have the evidence referred to in categories 1 and 2. One of the victims in this case stated that Petitioner produced the gun involved in the incident. (State's Lodging A-2 at 533.) Petitioner, however, maintained that the victim produced the gun. (*Id.* at 1159.) If DNA on the *inside* of the gun and related accoutrements belongs to the victim, that evidence could call into question the victim's testimony that he touched only the outside of the gun and perhaps the magazine clip during the struggle for the weapon.[7]

Category 3 relates to records of the ownership of the gun used during the crime, and Buckhorn Gun and Pawn has informed Petitioner that records of the ownership of the gun do, in fact, exist. The Court disagrees with the State's argument that ownership of the

---

[7] A fingerprint of one of the victims was found on the magazine clip inside the gun, and that evidence was presented at trial. The victim testified that, after the incident, he discovered he had pinched his thumb somehow and testified that this pinching could have been caused by the magazine popping out and then back into the gun. (State's Lodging A-2 at 510-11.) However, evidence of the victim's DNA on other interior items in the gun (for example, on the bullets or casings), might not be so easily explained.

gun is unimportant. If the gun belonged to the victim, then the victim committed perjury at trial, and Petitioner's version of the events would be more credible.

Given that Petitioner's and the victim's statements were diametrically opposed, there is reason to believe that (1) DNA evidence inside the gun and (2) gun ownership records could have affected the jury's verdict. Further, although the fact that Petitioner passed a polygraph test with respect to the incident giving rise to his prosecution and conviction would not be admissible at trial, at this juncture the Court finds this evidence somewhat probative in demonstrating good cause for discovery. Admissibility is not a prerequisite to application of the actual innocence exception. *Lee*, 653 F.3d at 938.

Petitioner's contentions as to the potential value of crime scene photographs (categories 4 and 5) are based only on speculation that the brick Petitioner claims to have used to defend himself might be visible in one of those photographs. The same is true with respect to the two audio CDs containing officers' initial witness interviews (categories 6 and 7)—the idea that these interviews might reveal inconsistencies is entirely speculative. Therefore, only categories 1 through 3 of Petitioner's requested discovery will be permitted.

### iii.    Conclusion

The Court finds that the State has relatively little interest in objecting to the limited discovery allowed by this Order. Petitioner has requested no state or federal funds and has notified Respondent and the Court that he will pay for the scientific testing in this case. Indeed, the limited discovery will cost the State nothing other than some additional time and some additional briefing, unless Respondent chooses to hire his own scientific

expert. The discovery permitted by this Order is narrow, is necessary for Petitioner to adequately respond to the Motion for Summary Dismissal, and is supported by good cause. *See* Habeas Rule 6(a).

## ORDER

**IT IS ORDERED:**

1.    All pending Motions for Extensions of Time (Dkt. 10, 13, and 17) are GRANTED.

2.    Respondent's Motion for Summary Dismissal (Dkt. 12) is DENIED without prejudice.

3.    Petitioner's Motion for Discovery (Dkt. 16) is GRANTED IN PART. Petitioner is granted leave to conduct discovery, including requesting the issuance of subpoenas duces tecum, with respect to the following items:

   (1)    The State's trial exhibits 61 (gun magazine), 61B (unused round), 61C (unused round), 61D (unused round); 62 (used round), 63 (fired shell casing), 64 (fired shell casing), 65 (fired shell casing), 66 (unfired 9MM round), and 67 (unfired 9MM round), for purposes of initial scientific testing by Bode Cellmark Forensics and, potentially, follow-up scientific testing by an expert retained by Respondent;

   (2)    All notes, DNA profiles, allele tables, test results, charts, and reports associated with forensic DNA testing in Petitioner's case that are in the possession of the Idaho State Police, also for purposes of scientific testing; and

(3)  Records from Buckhorn Gun and Pawn related to the firearm at issue
in Petitioner's case.

4.  Following Petitioner's scientific testing, Respondent may choose to have
his own expert conduct additional scientific testing on the items listed
above. Thus, if it appears that any scientific evidence might be destroyed
during Petitioner's initial testing process, Petitioner must notify Respondent
and the Court immediately and must refrain from conducting any
potentially destructive testing until the matter can be resolved.

5.  The parties shall have 180 days from the date of this Order within which to
complete the limited discovery set forth above. This date may be extended
if necessary—for example, if appropriate scientific testing cannot be
completed within that time frame. The parties are encouraged to work
together to resolve any issues with transfers of evidence prior to involving
the Court.

6.  Within 30 days after the close of discovery, Respondent may renew his
Motion for Summary Dismissal and may submit a supplemental opening
brief. Within 30 days after service of any such motion and brief, Petitioner
may submit a supplemental response brief with any supporting evidence.
Within 14 days after service of any such supplemental response brief,
Respondent may file a supplemental reply brief with any supporting
evidence. To avoid repeating themselves in their supplemental briefing, the
parties may choose to incorporate their initial briefing on the Motion for

Summary Dismissal. After any such motion is resolved—or if Respondent does not renew the motion, which would constitute a waiver of any argument that Petitioner's claims are not excused from procedural default— the Court will then set a briefing schedule with respect to the merits of the remaining claims, if any.

7.      The parties may stipulate to extensions of time to complete discovery or supplemental briefing and shall notify the Court accordingly. The Court will entertain motions for such extensions if the parties cannot agree.

DATED:  **September 19, 2017**

_____
Honorable Ronald E. Bush
United States Magistrate Judge