LAWRENCE G. WASDEN
Attorney General
State of Idaho

COLLEEN D. ZAHN
Deputy Attorney General
Chief, Criminal Law Division

MARK W. OLSON, ISB #7555
Deputy Attorney General
Email: mark.olson@ag.idaho.gov
Criminal Law Division
P.O. Box 83720
Boise, Idaho 83720-0010
Telephone: (208) 334-4539
Facsimile: (208) 854-8074

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSHUA LEE McGIBONEY, | CASE NO. 1:16-cv-150-REB |
| Petitioner, | |
| vs. | RESPONSE TO PETITIONER'S F.R.C.P. 62.1 MOTION FOR AN INDICATIVE RULING, AND |
| AL RAMIREZ[1], Warden of the Idaho State Correctional Institution | F.R.C.P. 60(b)(6) MOTION FOR RELIEF FROM JUDGMENT |
| Respondent. | |

COMES NOW, Respondent, Al Ramirez, Warden of the Idaho State Correctional Institution ("state"), by and through his attorney, Mark W. Olson, Deputy Attorney General, Capital Litigation Unit, and hereby responds to Petitioner's ("McGiboney") F.R.C.P. 62.1 motion

---

[1] The current warden of the I.S.C.I. is Al Ramirez, who should thus be substituted as Respondent in this proceeding.   28 U.S.C. § 2242; Rule 2(a) of the Rules Governing Section 2254 Cases.

*RESPONSE TO PETITIONER'S F.R.C.P. 62.1 MOTION FOR AN INDICATIVE RULING AND F.R.C.P. 60(b)(6) MOTION FOR RELIEF FROM JUDGMENT-* 1

for an indicative ruling (Dkt. 46), and F.R.C.P. 60(b)(6) motion for relief from judgment (Dkt. 47), by objecting to the same.

In March 2019, this Court entered a Memorandum Decision and Order granting the state's Renewed Motion for Summary Dismissal of McGiboney's habeas petition. (Dkt. 36.) This Order included a rejection of McGiboney's assertion that new evidence demonstrated his actual innocence, entitling him to a merits determination of his procedurally defaulted habeas claims. (Id, pp.4-27.) In October 2019, the Ninth Circuit Court of Appeals granted McGiboney's request for a certificate of appealability on two issues, including whether McGiboney demonstrated actual innocence. (Dkt. 43.) The parties have completed briefing in the appeal, and oral argument is currently scheduled for December 8, 2020.[2] (McGiboney v. Ramirez, Case No. 19-35327, 9/27/20 Order.)

McGiboney has now filed a F.R.C.P. 62.1 motion for an indicative ruling in this Court. (Dkt. 46.) In the motion, McGiboney requests an order indicating whether it would grant his F.R.C.P. 60(b)(6) motion for relief from judgment, which McGiboney has filed contemporaneously. (Dkts. 46, 47.) In the F.R.C.P. 60(b)(6) motion, McGiboney asserts that his discovery of "new evidence" constitutes extraordinary circumstances requiring this Court to re-open his habeas case and conclude that he has demonstrated actual innocence to excuse the procedural default of his habeas claims. (Dkt. 47.) McGiboney supports the motion with: (1) audio recordings and transcripts of witness interviews conducted by Boise police officers in the immediate aftermath of the incident, which include, McGiboney asserts, statements that could have been utilized to impeach those witnesses' trial testimony; and (2) a DNA Forensic Case

---

[2] McGiboney has filed a motion to the continue the scheduled oral argument pending this Court's resolution of his F.R.C.P. 60(b)(6) and 62.1 motions. (McGiboney, Case No. 19-35327, 10/21/20.) McGiboney's motion to continue the oral argument is still pending.

*RESPONSE TO PETITIONER'S F.R.C.P. 62.1 MOTION FOR AN INDICATIVE RULING AND F.R.C.P. 60(b)(6) MOTION FOR RELIEF FROM JUDGMENT-* 2

Report from DNA Experts LLC, which concluded that McGiboney could be excluded as the source of a partial DNA profile found on one of the unused ammunition rounds recovered from the gun used in the incident – a conclusion which disagrees with findings made in the Bode Cellmark Forensics DNA Case Report that McGiboney submitted to this Court in 2018 to support his assertion of actual innocence.  (Dkts. 47, 47-1 through 47-17.).

McGiboney has failed to demonstrate extraordinary circumstances justifying relief under F.R.C.P. 60(b)(6).  The audio recordings he relies upon as "new evidence" were made available to him prior to the trial as part of the normal discovery process, and thus cannot effectively support a F.R.C.P. 60(b)(6) motion.  In any event, the recordings provide only, at best, speculatively-useful impeachment material that does not demonstrate McGiboney's actual innocence.  Likewise, the DNA report, submitted four years after the initiation of this federal habeas proceeding, and more than a year after the habeas case was dismissed in this case, merely creates, at best, a competing-expert scenario which is not determinative of McGiboney's guilt or innocence.  This Court should therefore deny McGiboney's F.R.C.P. 60(b)(6) motion, or, in the alternative, defer considering it.

A federal district court generally does not have jurisdiction to act in a case while it is pending on appeal.  <u>Griggs v. Provident Consumer Discount Company</u>, 459 U.S. 56, 58 (1982).  However, F.R.C.P. 62.1 provides the court limited authority to indicate that it would entertain or grant a F.R.C.P. 60(b) motion to re-open a case.  <u>Crateo v. Intermark Inc.</u>, 536 F.2d 862, 869 (9th Cir. 1976).  Upon the filing of a F.R.C.P. 62.1 motion for an "indicative ruling," the district court may:  (1) defer considering it; (2) deny the motion; or (3) state either that it would grant the motion, or that it raises a substantial issue.  F.R.C.P. 62.1(a).  If the district court chooses the third option, then the Court of Appeals can remand the case to the district court for consideration

of the motion on its merits. F.R.C.P. 62.1(c). The district court is not bound to grant the motion after stating that the motion raises a substantial issue; further proceedings on remand may show that the motion ought not be granted. See Franklin Energy Storage One, LLC v. Kjellander, 2020 WL 2151854 at *3 (D. Idaho 2020) (citing F.R.C.P. 62.1 Advisory Committee's note to 2009 amendment).

F.R.C.P. 60(b) provides, in specific limited circumstances (including fraud and mistake), relief from a judgment. F.R.C.P. 60(b)(6) provides that a court may relieve a party of a final judgment or order for "any other reason [aside from the those enumerated in F.R.C.P. 60(b)(1) through (5)] that justifies relief." F.R.C.P. 60(b)(6) is thus a catch-all provision that is to be utilized only where "extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." United States v. Washington, 394 F.3d 1152, 1157 (9th Cir. 2005) (overruled on other grounds); see also Greenawalt v. Stewart, 105 F.3d 1268, 1273 (9th Cir. 1997); Ackermann v. United States, 340 U.S. 193, 198–202 (1950).

Further, the moving party "must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with ... the action in a proper fashion." Latshaw v. Trainer Wortham & Co., Inc., 452 F.3d 1097, 1103 (9th Cir. 2006) (quoting Comm. Dental Servs. v. Tani, 282 F.3d 1164, 1168 (9th Cir. 2002)); see also Lal v. California, 610 F.3d 518, 524 (9th Cir. 2010) (An attorney's actions are typically chargeable to his or her client and do not ordinarily constitute extraordinary circumstances warranting relief from judgment under Rule 60(b)(6).") Relief pursuant to F.R.C.P. 60(b)(6) is not available if the moving party is even partly to blame for delay in bringing the ground for relief before the court See Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 393 (1993); Lehman v. United States, 154 F.3d 1010, 1017 (9th Cir. 1998) ("Neglect or lack of diligence is not to be remedied

*RESPONSE TO PETITIONER'S F.R.C.P. 62.1 MOTION FOR AN INDICATIVE RULING AND F.R.C.P. 60(b)(6) MOTION FOR RELIEF FROM JUDGMENT- 4*

through Rule 60(b)(6).") F.R.C.P. 60(b)(6) motions must also be brought "within a reasonable time." F.R.C.P. 60(c)(1). What constitutes a "reasonable time" depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties. Ashford v. Steuart, 657 F.2d 1053, 1055 (9th Cir. 1981).

F.R.C.P. 60(b)(6) relief is to be used "sparingly," United States v. Alpine Land & Reservoir Co., 984 F.2d 1047, 1049 (9th Cir. 1993); *see also* Latshaw, 452 F.3d at 1103 ("Judgments are not often set aside under Rule 60(b)(6).") Reconsideration under F.R.C.P. 60(b)(6) "will rarely occur in the habeas context." Gonzalez v. Crosby, 545 U.S. 524, 535 (2005); *see also* Davis v. Kelley, 855 F.3d 833, 835 (8th Cir. 2017).

AEDPA did not expressly circumscribe the operation of F.R.C.P. 60(b) in habeas contexts. Gonzalez, 545 U.S. at 529. However, a F.R.C.P. 60(b) motion may not be used to avoid the requirements for second or successive habeas petitions set forth in 28 U.S.C. § 2244(b), and thus must not assert "claims." Id. at 530-531. A F.R.C.P. 60(b) motion advances a "claim" or "claims" within Section 2244's meaning, and thus constitutes a second or successive habeas petition (requiring certification from the Court of Appeals to pursue), when it asserts a federal basis for relief from a state court's judgment of conviction. Id. at 530. This occurs, *e.g.,* when the movant advances new grounds for habeas relief, presents new support for habeas claims already litigated, or attacks the federal court's resolution of a habeas claim on the merits. Id. at 530–532. However, a petitioner does not present a habeas claim "when he merely asserts that a previous ruling which precluded a merits determination was in error - for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar." Id. at 532 n.4.

*RESPONSE TO PETITIONER'S F.R.C.P. 62.1 MOTION FOR AN INDICATIVE RULING AND F.R.C.P. 60(b)(6) MOTION FOR RELIEF FROM JUDGMENT- 5*

Therefore, federal district courts generally have jurisdiction to consider F.R.C.P. 60(b) motions in habeas proceedings only so long as the motion attacks not the substance of the court's resolution of a habeas claim on the merits, but instead some defect in the integrity of the habeas proceeding. See id. at 532. In Gonzalez, the habeas petitioner moved for relief from judgment challenging the district court's determination that his habeas petition was time barred under AEDPA. Id. at 527. Because the motion challenged only the statute of limitations that applied to the habeas proceeding and did not assert a claim, the United Supreme Court held that it was not a second or successive habeas petition. Id. at 535-536, 538 ("A motion that, like petitioner's, challenges only the District Court's failure to reach the merits does not warrant such treatment, and can therefore be ruled upon by the District Court without precertification by the Court of Appeals pursuant to §2244(b)(3)")

In asserting that new evidence bolsters his previously-made claim of actual innocence, McGiboney is not, in a precise sense, asserting federal district court error, or "some defect in the integrity of the habeas proceedings." Further, several federal district courts have observed that no court has found that actual innocence *itself* is an extraordinary circumstance within the meaning of F.R.C.P. 60(b)(6). See e.g., Knisley v. Vasquez, 2013 WL 2154010, at *6 (C.D. Cal. 2013); Keeler v. Cate, 2011 WL 2003383, at *4 (S.D. Cal. 2011); Gibson v. Tampkins, 2017 WL 11444650, at *6 (E.D. Cal. 2017). However, McGiboney also does not appear to be advancing a "claim" or "claims" within the Section 2244 meaning of those terms, as discussed in Gonzalez. Additionally, federal courts have considered whether intervening changes in the law (such as McQuiggin v. Perkins, 569 U.S. 383 (2013), which held that a showing of actual innocence can overcome the habeas statute of limitations), permit a petitioner to attempt to demonstrate actual innocence in a F.R.C.P. 60(b) context. See e.g., Satterfield v. District Attorney Philadelphia, 872

*RESPONSE TO PETITIONER'S F.R.C.P. 62.1 MOTION FOR AN INDICATIVE RULING AND F.R.C.P. 60(b)(6) MOTION FOR RELIEF FROM JUDGMENT- 6*

F.3d 152 (3rd Cir. 2017). Assuming, but not conceding, that McGiboney's F.R.C.P. 60(b)(6) motion is not a successive habeas petition, and that the nature of McGiboney's assertions do not preclude F.R.C.P. 60(b)(6) consideration, the state asserts that McGiboney has failed to demonstrate "extraordinary circumstances" entitling to him to relief from this Court's judgment and dismissal order because: (1) the audio recordings he now submits were available to him at the time of trial; (2) even if considered, the recordings do not demonstrate McGiboney's actual innocence under the standard set forth in Schlup v. Delo, 513 U.S. 298 (1995); (3) the new DNA report merely provides a different expert conclusion that a reasonable juror would have to weigh; and (4) the conclusion made in the new DNA report, even if uncontroverted, is not contrary to the State's theory of the case and does not prove McGiboney's innocence. For similar reasons, McGiboney's F.R.C.P. 60(b)(6) motion is untimely.

This Court previously set forth, in significant detail, the Schlup actual innocence standard. (Dkt. 36, pp.4-7.) In short, a claim of actual innocence requires the habeas petitioner to present "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial," and "show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Schlup, 513 U.S. at 324, 327. As this Court also noted, while impeachment evidence alone can, in rare circumstances, satisfy the Schlup standard, it must be so compelling that it "fundamentally call[s] into question the reliability of [the petitioner's] conviction." Sistrunk v. Armenakis, 292 F.3d 669, 676-677 (9th Cir. 2002). For example, a "detailed third-party confession" that "undermine[s] the validity of the prosecution's entire case" would be compelling impeachment evidence. Id.

While the Ninth Circuit Court of Appeals has held that Schlup new evidence does not

have to be "newly discovered", but merely "new" in the sense that it was not presented to the jury, Griffin v. Johnson, 350 F.3d 956, 963 (9th Cir. 2003), a habeas petitioner's attempt to raise a Schlup claim through a F.R.C.P. 60(b)(6) motion requires additional hurdles.  As discussed above, a party is only entitled to F.R.C.P. 60(b)(6) relief in "extraordinary" circumstances, where such circumstances prevented the party from proceeding with the action in the proper fashion, and where the moving party has no blame for the delay in bringing the ground for relief before the court.  See Hamilton v. Newland, 374 F.3d 822, 825 (9th Cir. 2004) (holding that petitioner's belated actual innocence claim did not constitute extraordinary circumstances under F.R.C.P. 60(b)(6).)  In Hamilton, while disagreeing with the lower court's conclusion that the F.R.C.P. 60(b) motion was a successive habeas petition, the Ninth Circuit Court of Appeals that the requisite "extraordinary circumstances" for reconsideration were absent, because the evidence supporting the actual innocence claim was available at the time Hamilton filed his federal habeas petition; and that the prior omission of such a claim, even if due to his inexperience or inattention, did not constitute extraordinary circumstances.  Id. at 823-825; see also Greenawalt, 105 F.3d at 1273.

      The audio recordings McGiboney relies upon in support of his F.R.C.P. 60(b)(6) motion were previously available to him.  In a declaration, McGiboney acknowledges that his "recollection is that one of the State's discovery responses [prior to trial] indicated that audio/video could be reviewed at the prosecutor's office upon arrangement."  (Dkt. 47-2, p.3.)  Indeed – a state discovery response from the underlying trial proceeding disclosed: "Audio CD of Officers Hagler, Avella, Mathis, Gallas, Arend, Richmond & Newell, consisting of two (2) CD's (all provided on these 2 CD's)."  (Dkt. 48-1, p.6, disclosure #42.)  These are the same seven officers who conducted the recorded witness interviews that McGiboney submitted in

*RESPONSE TO PETITIONER'S F.R.C.P. 62.1 MOTION FOR AN INDICATIVE RULING AND F.R.C.P. 60(b)(6) MOTION FOR RELIEF FROM JUDGMENT- 8*

support of his F.R.C.P. 60(b)(6) motion. (Dkt. 47-17, Exhibit N.) Not only were those audio recordings made available for defense inspection at the Ada County Prosecutor's or Sheriff's Office (Dkt. 48-1, p.1), but a Certificate of Receipt from the underlying trial proceeding indicates that eight "AUDIO/VIDEO" CDs were physically prepared for McGiboney's trial counsel, Ed Odessey, and received by the Ada County Public Defender's Office in July 2008 – a few months prior to the trial. (Dkt. 48-2.) While this receipt does not specifically identify the content of those CDs, the aforementioned state discovery response lists exactly 8 CDs/DVDs – including the audio recordings of the seven officers named above. (Dkt. 48-1, p.6, disclosures #38-42.) Thus, it appears not only that Ed Odessey had access to this "new evidence" prior to the trial, but that he physically received copies of it. Whether or not Odessey reviewed the recordings, and whether or not Odessey reasonably decided not to pursue the potential witness impeachment avenues related to the recordings McGiboney now asserts should have been pursued, are questions far beyond the scope of what is required to establish "extraordinary circumstances" for F.R.C.P. 60(b)(6) purposes. Instead, McGiboney is essentially attempting to raise an untimely and procedurally improper Strickland[3] claim through a motion for relief from judgment. These recordings thus cannot effectively support his F.R.C.P. 60(b)(6) motion. F.R.C.P. 60(b)(6) would swallow up much of the state and federal courts' authority to determine post-conviction and habeas cases if it could be utilized to raise ordinary Strickland claims that could have been raised earlier.

In any event, even if this Court considers the content of the recordings, they do not demonstrate McGiboney's actual innocence. They provide instead, at best, hypothetical avenues of trial witness impeachment that may or may not have been effective depending on the

---

[3] Strickland v. Washington, 466 U.S. 668 (1984).

*RESPONSE TO PETITIONER'S F.R.C.P. 62.1 MOTION FOR AN INDICATIVE RULING AND F.R.C.P. 60(b)(6) MOTION FOR RELIEF FROM JUDGMENT- 9*

witnesses' responses to the relevant inquiries on cross-examination, the jury's credibility determinations regarding those explanations, and whether the jury's factual determinations would be altered in light of any posited inconsistencies between the witnesses' trial testimony and their prior statements. Such speculative evidence does not demonstrate <u>Schlup</u> actual innocence.

For example, McGiboney primarily highlights police interview statements made by an individual that he asserts is Nicholas Anderson, a neighbor of the victims, who identified McGiboney at trial as the person he saw drawing and shooting a handgun during the incident.[4] (Dkt. 47-1, pp.6-8.) Specifically, at the trial, when asked during direct examination if he was "certain" that the individual at the defense table (McGiboney) was the shooter, Anderson answered in the affirmative. (State's lodging A-2, pp.636-637.) In the recorded police interview conducted in the immediate aftermath of the incident, after Officer Mathis asked Anderson, "Face wise though, you wouldn't be able to recognize [the shooter]?", Anderson replied, "No, Probably not." (Dkts. 47-14, Exhibit K, p.1; 47-17 Exhibit N, Audio 1, 8:15 – 9:50.)

Nothing in Anderson's statements to Officer Mathis necessarily precluded his ability to later identify McGiboney in-person at the trial. Anderson was able to observe the shooter sufficiently enough to tell Officer Mathis that he was a white male; and to describe the shooter's clothing to some degree. (Dkts. 47-14, Exhibit K, pp.1, 3; 47-17 Exhibit N, Audio 1, 9:56 – 10:25). It is not surprising that an individual who had just recently been witness to a lengthy physical altercation culminating in a shooting would answer an officer's leading question, "you

---

[4] In the interview in question, Officer Mathis is speaking to Anderson and his roommate, Travis Williams. In a declaration, McGiboney asserts that he recognizes which voice belongs to which witness, "primarily because [] the subjects that Nick Anderson testified to at trial match the subjects of his voice in the audio." (Dkt. 47-2, p.6.)

wouldn't be able to recognize [the shooter]?" the way Anderson did, if he had *any* doubt about his ability to do so. Still, even in that tense moment, Anderson hedged and stated only that he would "probably" not be able "recognize" the shooter. Upon actually facing McGiboney – something he was not doing as he talked to Officer Mathis – Anderson *was* in fact, able to recognize McGiboney as the shooter. Anderson's prior guarded skepticism that he might not be able to do so does not disprove his subsequent testimony, let alone demonstrate McGiboney's actual innocence. Had McGiboney's trial counsel attempted to impeach Anderson on this prior statement, it can only be speculated as to what Anderson's response may be, and how a reasonable juror might process such testimony.

With respect to the other recorded witness interviews, McGiboney acknowledges that "some portions of these witnesses' statements at the scene are similar to their trial testimonies." (Dkt. 47-1, p.12.) Ultimately, it was a matter of trial strategy whether to go down particular roads of potential impeachment instead of, or in addition to, the extensive cross-examination McGiboney's counsel utilized with respect to these witnesses. (*See* generally, State's lodging A-2, pp.92-1067.) None of these interview statements or potential grounds for impeachment demonstrate actual innocence, let alone establish "extraordinary circumstances" necessitating F.R.C.P. 60(b) relief – particularly considering these recordings were all known to McGiboney's

*RESPONSE TO PETITIONER'S F.R.C.P. 62.1 MOTION FOR AN INDICATIVE RULING AND F.R.C.P. 60(b)(6) MOTION FOR RELIEF FROM JUDGMENT- 11*

counsel prior to trial.[5]

For example, McGiboney notes Ryan Lowe's police interview statements that he was unsure what McGiboney hit him with, but that he thought it was "maybe a brick," but was "probably a gun." (Dkts. 47-1, p.9; 47-15, Exhibit L, pp.2-3.) At trial, Lowe testified that it "could have easily been a brick" that he was hit with, as there were "bricks lying around." (State's lodging A-2, pp.499, 510.) However, the prosecutor also elicited testimony that, McGiboney asserts, demonstrated more certainty on the part of Lowe that he was hit with a gun. (Dkt. 47-1, p.9; State's lodging A-2, pp.499-500.) Upon cross-examination, when Lowe was asked twice whether he was sure it was a gun that he was hit with, he responded "Yeah," and then, "I believe so." (State's lodging A-1, p.536.) Any perceived impeachment value from McGiboney's labored analysis of this combined testimony is speculative at best. Even at trial, Lowe's responses on this point were imprecise and murky. In reviewing Lowe's testimony and a photograph of the scene of the incident that contained a brick, this Court recognized Lowe's confusion on this issue, as well as the limited relevance of this line of inquiry in the first place. (Dkt. 36, pp.15, 19.) As the Court noted, "that a landscaping brick might have been used during the struggle does not mean that Petitioner did not also pull a gun and hit Lowe in the head with the gun (or the brick)." (Dkt. 36, p.19.) In other words, Lowe's foggy recollections and

---

[5] In a footnote, McGiboney also speculates that Ryan Lowe, April Williamson, and David Bergerson may have "huddled" to discuss "how to approach the situation with the police" in the several-minute delay between the neighbors' 911 call and Williamson's call to the police. (Dkt. 47-1, pp.12-13 n.2.) McGiboney posits that these individuals were "no doubt concerned that the police would be suspicious because they had been to the apartment on a previous 'robbery' call a few months before." (id.) However, a review of the audio recordings clearly indicate that any police "suspicion" was not based upon, as McGiboney implies, questions about the legitimacy of the robbery reports, but upon the odor of marijuana noted by officers in their previous visit to the house, and how any robbery might be "connected to drugs somehow." (Dkts. 47-15, pp.1, 5, 7-8; 47-17, Exhibit N, Audio 4.) Further, April Williamson explained the "delay" in calling police, in that she could not immediately find a working phone. (Dkt. 47-15, p.7.)

RESPONSE TO PETITIONER'S F.R.C.P. 62.1 MOTION FOR AN INDICATIVE RULING AND F.R.C.P. 60(b)(6) MOTION FOR RELIEF FROM JUDGMENT- 12

statements about what he was hit with simply do not demonstrate McGiboney's innocence.

McGiboney also highlights police interview statements from David Bergerson that the intruders "didn't get what they wanted, so they left" and "couldn't find any money." (Dkt. 47-1, pp.11-12.)  McGiboney asserts that these statement cast doubt on McGiboney's robbery conviction. (Id.)  However, it is not surprising that Bergerson, in the immediate aftermath of the incident, had not completed an inventory of the household property.  Further, it was *Lowe*, not Bergerson, who testified that $2,000 dollars was taken from one of his drawers, that money was taken from wallet, and that other personal property was stolen. (State's lodging A-2, pp.492-493.)  Lowe testified that he saw one of the intruders taking money from his bedroom, but that it was not until "later on that night" that he discovered that some of his other property had been taken. (State's lodging A-2, pp.490-492.)  Bergerson testified, similarly to what he told police officers, that the intruder appeared to be frustrated that he could not locate money to steal, and that in fact, Bergerson was not aware, at the time, that the intruders took anything from the house. (State's lodging A-2, pp.367-368)

McGiboney also points to Bergerson's police interview statement that he thought he was shot with a 9mm handgun, based upon the "sound of it"; and that the gun had a "sliver slider" with a "black grip."  (Dkts. 47-1, p.11.)  McGiboney suggests that Bergerson's alleged familiarity with the weapon indicated that it originated from inside Bergerson's house, and not from McGiboney. (Id.)  However, McGiboney's theory of the case was that the gun belonged to *Lowe*, not Bergerson, as bolstered by Lowe's fingerprint being found on the magazine from the gun – a fact that, as this Court recognized (Dkt. 36, pp.11-13), the jury was aware of at the trial.

Finally, McGiboney notes that April Williamson told police at the scene of the incident that the only part of the altercation or aftermath she witnessed someone entering a car screaming

and driving away. (Dkt. 47-1, p.12.) Whereas at trial, Williamson acknowledged seeing "Dave, Ryan, and another person just wrestling and fighting." (Id., State's lodging A-1, p.590.) Even if inconsistent, McGiboney has not explained how Williamson's combined accounts demonstrate McGiboney's innocence. It's not surprising that Williamson would be able to provide a more thorough, detailed, and accurate account of her limited observations of the incident in a trial setting, rather than in the immediate aftermath of a prolonged physical altercation and shooting where Williamson was concerned about her child, her dog, being outside, and where she was going to sleep that night. (*See* Dkt. 47-15, pp.1-2, 4-9.) Nothing in Williamson's statements demonstrate McGiboney's actual innocence.

In support of his F.R.C.P. 60(b)(6) motion, McGiboney also submits a report from Forensic DNA Experts LLC which disagrees with one of the conclusions of the report from Bode Cellmark which McGiboney previously submitted in support of his assertion of actual innocence. (Dkts. 47-1, pp.13; 47-11.) The Bode Cellmark report, which McGiboney acknowledged was not fruitful in his prior attempt to establish actual innocence, concluded that the material found on the internal gun components, including the unused rounds, were insufficient to test for DNA. (Dkts. 30, pp.2-3; 30-1, pp.7-8.) This report further stated that its testing was conducted in compliance with accredited procedures. (Dkt. 30-1, p.7.) After not obtaining his desired result from Bode Cellmark, McGiboney sought, apparently after the habeas case was dismissed, additional DNA testing from Forensic DNA Experts LLC. (Dkt. 47-2, pp.6-7.) This new report, which relied upon the Bode Cellmark report and known DNA profiles, concluded that McGiboney could be excluded as the source of the partial DNA profile found on Exhibit 61B, one of the unused rounds recovered from the handgun. (Dkt. 47-11.) As McGiboney acknowledges (Dkt. 47-1, p.13), the Forensic DNA Experts LLC report did not match any of the

recovered DNA profiles to Lowe or Bergerson's known DNA profiles (Dkt. 47-11).

McGiboney's second submitted forensic DNA report does not establish actual innocence, or constitute extraordinary circumstances necessitating F.R.C.P. 60(b)(6) relief. At best, McGiboney has located, 12 years after his conviction, and more than four years after he initiated this habeas proceeding, a competing expert. This does not establish actual innocence. *See e.g.*, Cruz v. Stephens, 2016 WL 3829656 at *3 (W.D. Tex. 2016) (rejecting petitioner's Schlup claim, which was based upon the discovery of a competing expert who rebutted certain trial testimony, because a reasonable juror could easily decide to credit one competing expert over the other); Keaton v. Folino, 2018 WL 8584252 at *53 (E.D. Pa. 2018) ("*Schlup* requires much more than simply squaring up two competing expert opinions"); Hall v. Superintendent, 834 F.Supp.2d 848, 860-861 (N.D. Ind. 2011) (in rejecting habeas petitioner's Schlup claim, stating that "the introduction of a divergent expert opinion does not demonstrate innocence") (vacated on other grounds).

Finally, even if McGiboney could establish that his second submitted forensic report was correct, and his first submitted report was not, this still does not demonstrate his innocence. Recovered DNA belonging to someone other than McGiboney would not necessarily be contrary to the state's theory of the case. McGiboney could have borrowed the gun and/or obtained the ammo from another individual, rather than directly from a commercial gun and ammo supplier, resulting in another individual's DNA being deposited on the ammunition round. McGiboney could even have still loaded the weapon himself, but unlike any individual who previously handled the ammo, not leave a DNA profile. For these reasons, McGiboney has not demonstrated actual innocence under the exacting Schlup standard (particularly considering all of the evidence of guilt presented at the trial, as summarized by this Court in its Memorandum

Decision and Order (Dkt. 36), and the state's briefs submitted in support of its Renewed Motion for Summary Dismissal (Dkts. 28, 33)), let alone established extraordinary circumstances warranting F.R.C.P. 60(b)(6) relief.

The state respectfully requests this Court deny McGiboney's F.R.C.P 60(b)(6) motion for relief from judgment, and his F.R.C.P. 62.1 Motion for an Indicative Ruling.  In the alternative, the state respectfully requests that this Court defer considering the Rule 60(b)(6) motion; or, the further alternative, conclude that the motion raises a substantial issue (rather than simply granting the motion).  In such an event, the state requests the opportunity to formally respond to McGiboney's F.R.C.P. 60(b)(6) motion.

DATED this 6th day of November, 2020.

/s/
MARK W. OLSON
Deputy Attorney General
Capital Litigation Unit

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on or about the 6th day of November, 2020, I caused to be serviced a true and correct copy of the foregoing document by the method indicated below, postage prepaid where applicable, and addressed to the following:

| | | |
|---|---|---|
| Craig H. Durham | ____ | U.S. Mail |
| Ferguson Durham, PLLC | ____ | Hand Delivery |
| 223 N. 6th Street, Suite 325 | ____ | Overnight Mail |
| Boise, ID 83702 | ____ | Facsimile |
| | _X_ | Electronic Court Filing |

/s/
MARK W. OLSON
Deputy Attorney General
Capital Litigation Unit

*RESPONSE TO PETITIONER'S F.R.C.P. 62.1 MOTION FOR AN INDICATIVE RULING AND F.R.C.P. 60(b)(6) MOTION FOR RELIEF FROM JUDGMENT- 16*