Craig H. Durham
FERGUSON DURHAM, PLLC
223 N. 6th Street, Suite 325
Boise, Idaho 83702
T: (208) 724-2617
F: (208) 906-8663
chd@fergusondurham.com
ISB No. 6428

Attorney for Petitioner

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| JOSHUA LEE McGIBONEY, <br><br> Petitioner, <br><br> v. <br><br> AL RAMIREZ, Warden of the Idaho State Correctional Institution, <br><br> Respondent. | Case No. 1:16-cv-150-REB <br><br> **REPLY IN SUPPORT OF MOTION FOR RELIEF FROM JUDGMENT** |

The Warden has filed his response, objecting to McGiboney's motion for relief from judgment. (Dkt. 48.) McGiboney rests mainly on his original memorandum and supporting evidence (Dkts 47), but he will take this opportunity to reply to a few items raised in the response.

1

    1.    *Rule 60(b)(6) is an appropriate vehicle by which these arguments can be brought.*

Respondent first gestures to the bar on second or successive habeas petitions in 28 U.S.C. § 2244. He argues that McGiboney does not "in a precise sense" allege "some defect in the integrity of the habeas proceedings," which would otherwise allow a Rule 60(b) in a habeas case. (Dkt. 48, p. 7.) Respondent then assumes, without conceding, that McGiboney's "Rule 60(b)(6) motion is not a successive habeas petition." (*Id*.)

It is unclear whether Respondent is invoking the bar on second or successive petitions or just noting that it exists. In any case, the Court should disregard his gesture. McGiboney is not raising claims for habeas relief on the merits in this motion. He is instead arguing that evidence provided to him for the first time after the Court's judgment calls into doubt the underpinnings of the Court's earlier procedural ruling.

The Supreme Court has addressed this type of issue before. It has characterized proper Rule 60(b) motions in habeas cases as ones in which the movant "asserts that a previous ruling which precluded a merits determination was in error – for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar." *Gonzales v. Crosby*, 545 U.S 524, 532 n. 4 & 5 (2005). That is the case here. This Court never reached the merits of any claims because it dismissed all McGiboney's claims on procedural default grounds. A motion under Rule 60(b) is appropriate.

### 2. *This evidence is new as to McGiboney.*

Much of Respondent's argument rests on the premise that the audio recordings are not "new" evidence because they may have been given to McGiboney's trial counsel. Yet, as Respondent acknowledges, a *Schlup* claim need not depend on "newly discovered" evidence and can instead be based on evidence that is "new" because the jury never heard it. *E.g.*, *Griffin v. Johnson*, 350 F.3d 956, 963 (9th Cir. 2003).

In a similar vein, Respondent seems to suggest that the Court should find that McGiboney lacked diligence in developing an argument based on this evidence. But it is hardly an excuse to say that trial counsel – the very counsel who McGiboney has consistently and repeatedly claimed ignored him and failed to protect his rights – may have had the recordings in his possession at some point. Respondent ignores the wealth of evidence in McGiboney's declaration showing *his* diligence in trying for years to dislodge from anyone he could this very evidence, *including from his trial counsel*. (Dkt. 47-2, Declaration of Joshua McGiboney.) He was stymied by trial counsel and the Ada County Public Defender's office, who told him many years after trial that they had given him everything that was in their file. (*Id*. ¶¶ 16, 18.) He was finally able to get the recordings in a renewed public records request only after this Court had entered its judgment. (*Id*. ¶ 25.) Respondent's argument might make more sense if McGiboney or current counsel had the recordings and sat on them until after the Court ruled. That's not what happened.

Nor is McGiboney making a back-door *Strickland* claim, as Respondent contends. (Dkt. 48, p. 8.) He is not at this point asking for habeas relief based on these facts. He is instead trying to open a gateway to get to the merits of other claims. A Rule 60 motion is one that invokes the Court's equitable powers to correct an injustice. *Delay v. Gordon*, 475 F.3d 1039, 1044 (9th Cir. 2007). As a matter of fairness and equity, the Court can surely consider that McGiboney, himself, did not have these recordings until recently and could not have taken "timely action" before judgment based on them.[1]

    *3.*      *The new impeachment material is more powerful than Respondent claims.*

Next, Respondent dismisses the value of the evidence, claiming that it is speculative. (Dkt. 48, pp. 9-10.) McGiboney will not repeat his argument from his initial memorandum about the newly discovered statements that would undermine the credibility of Lowe, Bergerson, and Williamson. It is enough to say that the landscaping brick *was* an important part of the trial, so much so that the prosecutor devoted portions of her closing argument to its "absence" and hid the photo that supported McGiboney's version that it existed; that impeaching Lowe's claim at trial that money and property were taken raises doubt as to the most serious charge, robbery; that Bergerson's familiarity with the handgun implies that he knew it was Lowe's gun because he had

---

[1] If he were making a merits-based ineffective assistance of counsel claim, he would have a strong argument that the factual basis for the claim was withheld from him for years.

4

seen it before; and that Williamson's evolution on what she saw, which lined up with the State's trial theory, would have made her credibility suspect.

McGiboney will focus here on the new evidence that Nick Anderson told an officer right after the incident that he did not believe that he could identify the shooter because he didn't get a good look at his face. Respondent writes that "[n]othing in Anderson's statements to Officer Mathis necessarily precluded his ability to later identify McGiboney in-person at the trial." (Dkt. 48, p. 10.) Respondent continues that it is not "surprising that an individual who had just recently been witness to a lengthy physical altercation culminating in a shooting" would hedge at the scene but could later recognize who he saw and identify him in the courtroom. (Dkt. 48, pp. 10-11.)

Respondent has this exactly backward. One's memory does not improve with time. Anderson did not tell the officer that he got a great look at the person's face for a long time and believed he could identify him later. He essentially said the opposite.

It is simply not credible to believe that someone who witnessed a shooting under dark, tense, and brief circumstances, *and who told an officer minutes after the event that he would be unable to identify the shooter*, could then make an accurate identification months later at trial. The circumstances under which Anderson identified McGiboney were incredibly suggestive. *See, e.g.*, *Commonwealth v. Crayton*, 21 N.E.3d 157 (Mass. 2014) (discussing the suggestiveness of first-time, in-court identifications and allowing them to be admitted only where there is "good reason"). Misidentifications from one-person,

5

in-court show-ups like this are a primary driver of wrongful convictions. *See* Innocence Project, "DNA Exonerations in the United States," at https://tinyurl.com/y3woyqut (noting that 69% of the exonerations involved misidentification and 54% of those "involved an in-court misidentification.") Psychological research establishes that one can be certain of their identification and still be very wrong. Jeffrey S. Neushatz, et al., *A Comprehensive Evaluation of Showups*, 1 Advances in Psychology & Law 43, 58 (2016); *see also State v. Lawson*, 3291 P.3d 673, 704 (Or. 2012) (noting that "self-reports on eyewitness certainty are highly susceptible to suggestive procedures and confirming feedback").

Respondent also argues that the effect of the impeachment is speculative because it depends on how Anderson would have responded when confronted with his prior inconsistent statement. (Dkt. 48, p. 10.) True, he might have tried to deflect in the same way Respondent does here by claiming that he was unsure before but became certain when he saw McGiboney in court. But that is an easy target for any competent defense attorney for the reasons already given. It would only help the defense if Anderson testified to something like, "I know I told an officer on the scene that I didn't get a good look at the person's face, but that was because it was dark and stressful and I didn't want to project undue certainty; now, months later and in the calm light of this courtroom, I am positive that it was this guy sitting next to his attorney." No reasonable juror would take that at face value.

Anderson was the only non-interested witness to identify McGiboney as the shooter. This Court relied on what it perceived to be his solid eyewitness identification in rejecting McGiboney's *Schlup* claim. Evidence that undermines confidence in the accuracy of his identification should likewise undermine the Court's confidence in its previous ruling.

> 4. *The new expert opinion about the DNA result is complementary to the other evidence of innocence.*

Respondent brushes aside Dr. Miller as a "competing" expert whose opinion does not prove McGiboney's innocence. (Dkt. 48, pp. 14-15.) McGiboney has not claimed that Dr. Miller's conclusion that he could be excluded as a contributor of the genetic material on an unused round, by itself, proves his innocence. It is instead one more piece to the puzzle. It is undisputed that Ryan Lowe's thumbprint was on the magazine that was in the butt of the gun. This new evidence shows that the person who left genetic material on a round in that magazine was not McGiboney. It does not exclude Lowe. The Miller evidence is complementary to the other evidence that supports the *Schlup* claim.

\* \* \*

Respondent continues to divide McGiboney's new evidence before trying to conquer it, arguing that each piece in isolation does not prove that he is innocent. That is no doubt true. But that does not ask the right question. The right question is whether all the evidence, weighed and assessed cumulatively, establishes that it is more likely

7

than not that any juror would find a reasonable doubt about McGiboney's guilt. *See Stewart v. Cate*, 757 F.3d 929, 1003 (9th Cir. 2014) (holding that a court must review evidence cumulatively). McGiboney respectfully contends that when the new evidence discussed in this motion is considered cumulatively with the evidence that the Court previously reviewed, the Court should reconsider its decision and find that the miscarriage of justice exception applies.

## CONCLUSION

This Court should grant the Rule 60(b) motion, vacate its judgment, and proceed to the merits.

Dated this 20th day of November, 2020.

/s/Craig H. Durham
Attorney for Josh McGiboney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th of November, 2020, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

    Mark Olson
    mark.olson@ag.idaho.gov

    Attorney for the Respondent

                                          <u>/s/Craig H. Durham</u>